**REDSHAW CREDIT CORPORATION, Plaintiff,**

v.

**INSURANCE PROFESSIONALS, INCORPORATED, a Kansas corporation, Defendant.**

No. 88–1590–K.

United States District Court, D. Kansas.

March 29, 1989.

Trisha A. Thelen, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Roger Sherwood, Sherwood, Hensley, Harper & Gregory, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The plaintiff, Redshaw Credit Corporation, brought the present action to collect $70,348.57, representing sums allegedly due under a lease agreement entered into between Redshaw and the defendant, Insurance Professionals, Incorporated. Under the lease agreement, Redshaw agreed to provide Insurance Professionals with computer hardware, accessories, equipment, and software in exchange for specified payments by Insurance Professionals.

Insurance Professionals filed a counterclaim on November 14, 1988, alleging that the software Redshaw had provided was unsatisfactory. On December 15, 1988, Redshaw filed a motion to dismiss the counterclaim, or in the alternative, to stay the counterclaim pending arbitration. A hearing on Redshaw's motion was held on March 10, 1989.

In considering a motion for dismissal for failure to state a claim, the court must accept as true the factual allegations pled by the plaintiff, and "all reasonable inferences must be indulged in favor of the plaintiff." *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of his claim which would entitle him to relief. *Swanson v. Bixler*, 750 F.2d 810 (10th Cir.1985).

### Findings of Fact

Redshaw's motion is based on the license agreement attached to the lease agreement entered into between the parties. Under the lease agreement, Redshaw agreed to supply Insurance Professionals with computer software, in addition to computer hardware and equipment. However, the software provided was "subject to the terms and conditions of the Redshaw License Agreement."

The license agreement contains all the express warranties made by Redshaw relating to the performance of the software. In addition, ¶ 9.6 of the license agreement provides in part that "[a]ny controversy arising with respect to this Agreement shall be determined by arbitration in the city of Pittsburgh, Pennsylvania...."

### Conclusions of Law

Defendant Insurance Professionals does not dispute the argument made by Redshaw that the counterclaim is limited solely to the allegedly unsatisfactory nature of the software provided by Redshaw. Under the plain terms of the license agreement, arbitration of the substance of the counterclaim is therefore required. This court heard oral argument on the plaintiff's motion on March 10, 1989, and announced its ruling at that time. Consistent with its statements at the hearing and for the reasons set forth herein, the court grants plaintiff's motion for summary judgment.

In response to Redshaw's motion to dismiss the counterclaim for failure to state a

claim pursuant to Fed.R.Civ.P. 12(b)(6), or to stay the counterclaim pending arbitration in Pennsylvania, Insurance Professionals suggests Redshaw's motion to arbitrate the counterclaim is inconsistent with its action in filing the present collection action for the property provided under the lease agreement, including the software. The alleged inconsistency is not substantial. While the license agreement (with the attached arbitration clause) applies to the software to be provided under the general lease agreement, it is the latter which creates the obligation of the lessee to pay the sums due under the contract. Redshaw appears to have properly initiated its attempt to collect the sums allegedly due under the contract by litigation rather than arbitration, since the lease agreement does not include an arbitration clause similar to that contained in the license agreement. Since the dispute between the parties has now touched upon the fitness of the software provided by Redshaw, arbitration is appropriate.

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, creates a liberal federal policy in favor of arbitration. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The fulfillment of the goals of the Act, the "enforcement of private agreements and encouragement of efficient and speedy dispute resolution," requires the rigorous enforcement of private agreements to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

Plaintiff Redshaw additionally argues in its motion that the counterclaim should be dismissed for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Redshaw's motion is based upon the agreement of the parties in the license agreement to arbitrate disputes relating to the software in Pittsburgh, Pennsylvania.

■ Courts have generally held that a valid agreement to arbitrate disputes in a particular location should be enforced. *See, e.g., Snyder v. Smith,* 736 F.2d 409, 419 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). More-

over, parties opposing the application of such a clause face a stricter standard than faced by those opposing a clause designating a particular forum for litigation, instead of arbitration. In *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679 (5th Cir.1976), the court held that, unlike contract clauses designating a particular forum for litigation, which will be upheld unless unreasonable, an agreement to arbitrate in a particular forum will be upheld unless the party seeking to avoid arbitration can "prove that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of any contract.'" *Id.,* at 681 (quoting 9 U.S.C. § 2). As long as these requirements are met, the clause must be enforced even if the result is unreasonable. *National Iranian Oil Co. v. Ashland Oil, Inc.,* 817 F.2d 326, 332 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).

Insurance Professionals argues that Kansas is a proper venue for its counterclaim, and that provision in the license agreement requiring arbitration in Pennsylvania is not controlling. In support of its argument, it cites the recent decision of the Supreme Court in *Stewart Organization, Inc. v. Ricoh Corp.,* —— U.S. ——, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In *Stewart,* the Court held that forum selection clauses are not dispositive in determining whether to grant a change of venue pursuant to 28 U.S.C. § 1404(a). Instead, a contract clause designating an agreed venue for litigation is to be considered as one factor in the balancing of interests performed by the court in determining whether to grant a motion for a change of venue under § 1404(a).

In the present action, however, the balancing test approach of § 1404(a) is not a limitation on the enforceability of the parties' agreement to arbitrate disputes in Pennsylvania. *Stewart* recognized that forum selection clauses are not definitive where one party seeks a change of venue pursuant to § 1404(a). Venue is improper in this case, on the other hand, not because of the balance of factors recognized by

§ 1404(a), but because of the agreement to arbitrate, coupled with the strong federal policy supporting arbitration agreements.

The distinction between venue based upon a contract clause relating to arbitration and a clause relating to litigation was recognized in *Spring Hope Rockwool, Inc. v. Industrial Clean Air, Inc.*, 504 F.Supp. 1385 (E.D.N.C.1981). In that case, the plaintiff sought to avoid the application of a contract clause requiring arbitration in California, asserting the doctrine of *forum non conveniens.* The district court found the contract clause binding, and found the doctrine of *forum non conveniens* inapplicable under the Arbitration Act.

Plaintiff seeks to rely on *The Bremen v. Zapata Off–Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *The Bremen,* however, the Supreme Court addressed a contractual provision which chose a forum for litigation, not for arbitration. While the two types of provisions are quite similar and while courts enforce both in the absence of extraordinary circumstances, an arbitration provision has the additional force of the Congressional imprimatur found in section 2 of the Arbitration Act.

*Id.,* at 1389.

■ Since the present case involves an agreement to arbitrate in a designated location, the balancing test approach utilized under § 1404(a) is not a limitation on the enforceability of the agreement, and *Stewart* is not controlling. The arbitration clause must be enforced, since there is absolutely no indication that the license agreement containing the arbitration clause was reached through fraud, coercion, or other grounds justifying the revocation of a contract. *See Sam Reisfeld & Son,* 530 F.2d at 881.

■ Finally, defendant Insurance Professionals argues that Redshaw waived its right to arbitrate by bringing the present collection action. The right to arbitration, like any right established by contract, can be waived. *Ormsbee Development Co. v. Grace,* 668 F.2d 1140 (10th Cir.), *cert. denied, Grace v. Santa Fe Pacific Ry.,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982);

*Reid Burton Constr., Inc. v. Carpenters Dist. Council, Etc.,* 614 F.2d 698 (10th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980). However, waiver of a contractual right to arbitration is not favored. *Lake Communications, Inc. v. ICC Corp.,* 738 F.2d 1473, 1477 (9th Cir. 1984). Because of the strong federal policy favoring the enforcement of arbitration agreements, the party asserting waiver "bears a heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir.1982).

The Tenth Circuit discussed the tests to be used in determining whether a party has waived its right to arbitrate in *Reid Burton,* 614 F.2d at 698. While "[t]here is no set rule as to what constitutes a waiver," the court was able to identify several circumstances relevant to the determination of whether a waiver exists in a given case. *Id.,* at 702.

In determining whether a party to an arbitration agreement, usually a defendant, has waived its arbitration right, federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right; whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff; whether there has been a long delay in seeking a stay or whether the enforcement of arbitration was brought up when trial was near at hand.

Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings; whether important intervening steps [*e.g.,* taking advantage of judicial discovery procedures not available in arbitration] had taken place; and whether the other party was affected, misled, or prejudiced by the delay.

*Id.* (citations omitted).

Other courts have also found that the party asserting waiver must establish that it was prejudiced by the actions of the

other party which underlie the claim of waiver. *Lake Communications,* 738 F.2d at 1477; *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 862 (2d Cir. 1985); *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 694 (9th Cir.1986).

■ The waiver argument advanced by Insurance Professionals must be rejected. There is no indication that Redshaw has taken actions inconsistent with its right to arbitrate claims arising under the license agreement. *See Fisher,* 791 F.2d at 694. While Redshaw brought the present action in Kansas to collect sums owing under the lease agreement, such an action is not inconsistent with its right under the license agreement to arbitrate disputes relating to the performance of the Redshaw software. Indeed, since the lease agreement contains no consent to arbitrate claims for payment under the lease, Redshaw was obliged to litigate its claim. The Second Circuit has held that waiver "may not be inferred on the basis of conduct relating to non-arbitrable issues." *Seguros Banvenez,* 761 F.2d at 862. Moreover, Insurance Professionals has failed completely to demonstrate how it may have been prejudiced by Redshaw's decision to bring the present collection action.

Insurance Professionals' reliance on the decision of the Tenth Circuit in *Reid Burton* is inappropriate. In that case, the court noted that the defendants (the party which allegedly waived its right to arbitrate) had failed to seek a stay of the plaintiff's claim until the day of trial and after the completion of pretrial and discovery proceedings lasting over one year. 614 F.2d at 699–700, 703 n. 8. The court also found that an order requiring arbitration would have resulted in prejudice to the plaintiff, arising from the "defendants' participation in numerous hearings, pretrial conferences, motions and other pleadings, and the deposing of witnesses; and their assertion of the arbitration clause as a defense in bar and a counterclaim, without insisting upon or demanding immediately" a stay of the plaintiff's claim pursuant to the arbitration agreement. *Id.,* at 703.

In the present case, Redshaw filed its complaint seeking to recover the sums due on October 12, 1988. Insurance Professionals filed its counterclaim alleging deficiencies in the Redshaw software on November 14, 1988. Redshaw responded by filing its motion to dismiss the counterclaim or to stay the counterclaim pending arbitration on December 15, 1988. No significant discovery or other pretrial proceedings have yet taken place.

The facts of the present case do not indicate that Redshaw has taken actions reflecting a waiver of its right to arbitrate disputes relating to its software. Redshaw's filing of its collection claim under the lease agreement did not create a waiver of its right to arbitrate disputes arising under the license agreement. Redshaw has acted promptly to protect its right under the license agreement to arbitrate such disputes. Finally, Insurance Professionals has not met its burden to demonstrate how it may have been prejudiced by the one month delay of Redshaw in filing its motion to dismiss or stay the counterclaim.

IT IS ACCORDINGLY ORDERED this 29 day of March, 1989, that Redshaw's motion to dismiss for failure to state a claim and for improper venue is granted. Redshaw's collection action is hereby stayed until the conclusion of arbitration.